UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>RAJESH KUMAR KAPOOR,<br>Defendant. | Case No. 24-cr-00158-EMC-1<br><br>**ORDER RE L.M. AND T.C. INCIDENTS**<br><br>Docket Nos. 19, 57 |

Previously, the Court excluded three prior bad acts that the government sought to admit pursuant to Federal Rules of Evidence 413 and/or 404(b). *See* Docket No. 56 (minutes). The Court now addresses the remaining two prior bad acts – both involving strangers rather than persons with whom Mr. Kapoor had consensual relationships.

## I.   DISCUSSION

A.   Evidence Related to L.M.

The government argues that the evidence related to L.M. is admissible under both Rules 413 and 404(b).

1.   Rule 413

Rule 413 provides that, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." Fed. R. Evid. 413(a). "Sexual assault" is defined as, *inter alia*, "any conduct prohibited by 18 U.S.C. chapter 109A" as well as "an attempt . . . to engage in [such] conduct." Fed. R. Evid. 413(d). Conduct prohibited by 18 U.S.C. chapter 109A includes sexual abuse (see 18 U.S.C. § 2242) and abusive sexual contact (see 18 U.S.C. § 2244).

As an initial matter, the government contends that a reasonable jury could find, by a preponderance of the evidence, that the L.M. incident was attempted sexual abuse (*e.g.*, attempted rape) or attempted abusive sexual contact. *See Huddleston v. U.S.*, 485 U.S. 681, 689-90 (1988) (stating that, "[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor" and that the "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find the [similar act] by a preponderance of the evidence").[1]

The Court agrees. L.M. is expected to testify that she was working at a storage facility and that Mr. Kapoor came to the facility and rented a unit. About an hour later, he returned and asked to rent another unit because the first one was not big enough. Mr. Kapoor asked to see the actual unit, so L.M. showed him one on the second floor of the facility. While she was showing him the unit, Mr. Kapoor wrapped both of his arms around L.M. and hugged her, and then tried to kiss her. When L.M. pushed him away, Mr. Kapoor tried to push her into the unit. L.M. then shoved Mr. Kapoor "hard and ran out of the unit." Docket No. 45-8 (ECF Page 2). According to L.M., she had a "'fight or flight' response," and, after the incident, she no longer felt safe at the job. Docket No. 45-8 (ECF Page 2). Based on this anticipated testimony, a jury could reasonably find by a preponderance of the evidence an attempted rape or at least an attempted abusive sexual contact.[2] *See* 18 U.S.C. § 2246 (3) (providing that "the term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or

---

[1] In his supplemental brief, Mr. Kapoor seems to suggest that *Huddleston* simply addresses whether a prior act occurred – not whether the act qualifies as a sexual assault. *See* Docket No. 72 (Br. at 5). This is true. However, the *Huddleston* standard has been applied to sexual assault cases. *See United States v. Norris*, 428 F.3d 907, 913-14 (9th Cir. 2005) ("The Supreme Court's decision in *Huddleston* . . . , which governs the admissibility of evidence under Rule 404(b), also controls the standard of proof required to admit evidence under Rules 413-415. . . . Considering all the evidence, there was sufficient proof for a jury to reasonably find the conditional fact, that Norris committed the prior sexual act, by a preponderance of the evidence."); *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 154-55 (3d Cir. 2002) ("[W]e conclude, albeit with some reluctance, that *Huddleston*'s standard for the admission of evidence applies to Rule 415. As such, a trial court considering evidence offered under Rule 415 must decide under Rule 104(b) whether a reasonable jury could find by a preponderance of the evidence that the past act was an 'offense of sexual assault' under Rule 413(d)'s definition and that it was committed by the defendant.").

[2] According to Mr. Kapoor, an attempt requires a direct but ineffectual step toward the commission of the crime. Even if that is true, there is evidence of such as discussed above.

1  buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the
2  sexual desire of any person"). To be clear, a jury need not so find. The Court expects that the
3  defense will cross-examine L.M. about, *e.g.*, inconsistencies between the police report and the FBI
4  interview. Nevertheless, the *Huddleston* standard (that there are sufficient facts from which a jury
5  could make a finding) has been met and therefore *Huddleston* is not a bar to admissibility of the
6  L.M. evidence.

7  The Court therefore turns to whether the evidence should be admitted. Under Rule 413
8  (and practically speaking, Rule 403), factors that courts consider in deciding whether evidence of
9  prior sexual misconduct is admissible include the following: "the similarity of the prior acts to the
10  acts charged," (2) the "closeness in time of the prior acts to the acts charged," (3) "the frequency
11  of the prior acts," (4) the "presence or lack of intervening circumstances," and (5) "the necessity of
12  the evidence beyond the testimonies already offered at trial." *United States v. LeMay*, 260 F.3d
13  1018, 1028 (9th Cir. 2001).

14  These factors largely weigh in favor of admissibility. For example, there are notable
15  similarities between the L.M. incident and the charged incident (involving C.K.). Both L.M. and
16  C.K. were strangers to Mr. Kapoor. Both L.M. and C.K. were young women. (At the time of the
17  incident, L.M. was 21 years old as was C.K.) Both L.M. and C.K. were vulnerable in that not only
18  were they young but they were also working or traveling alone. Each woman was a "captive"
19  audience in that L.M. was obligated to engage with a customer and C.K. was restricted to her
20  airplane seat. To be sure, there were other passengers in proximity on the airplane, a factor not
21  present in L.M.'s case, but there was a potential for some degree of isolation of the victim in each
22  (in C.K.'s case, an otherwise preoccupied seat neighbor). During each incident, Mr. Kapoor first
23  sought personal information and then quickly escalated to physical contact.

24  The frequency factor also weighs in favor of the government. Mr. Kapoor concedes that,
25  under *LeMay*, the Court may consider all prior acts (so long as similar), even if the government
26  does not seek to admit those prior acts as evidence. *See LeMay*, 260 F.3d at 1029 (in discussing
27  whether evidence of prior bad acts from 1989 should be admissible, referring to a third incident
28  that took place even earlier "when LeMay himself was extremely young, and, as the prosecutor

noted, was 'triple hearsay'"; nevertheless, "that there was evidence of a third similar incident suggests that LeMay's abuse of his cousins in 1989 was not an isolated occurrence").[3]  Here, there is evidence that Mr. Kapoor engaged in similar conduct with T.C. (see *infra*) as well as with his ex-wife R.S. on their first date (*i.e.*, when they were essentially strangers).[4]

In addition, there is an absence of intervening circumstances that would affect the Court's analysis.  *Compare* Docket No. 56 (minutes) (noting that there were intervening circumstances with Mr. Kapoor's ex-wives and ex-girlfriend – *e.g.*, there were contentious child custody proceedings with A.B. and substantial disputes with R.S. over assets post-divorce).

The Court acknowledges that the L.M. incident is somewhat remote in time from the charged incident (occurring back in 2012).  Nevertheless, the frequency factor (discussed above) somewhat counters this fact.  Furthermore, as noted in the Weinstein's treatise, "[t]he time lapse between the other sexual assault and the charged offense is more likely to affect the weight than the admissibility of the evidence.  The language of the rule does not address this problem, but the legislative history indicates that 'there is no time limit beyond which prior sex offenses by a defendant are inadmissible.'"  2 Weinstein's Fed. Evid § 413.03; *see also United States v. Baker*, CR24-0058-JCC, 2024 U.S. Dist. LEXIS 177999 (W.D. Wash. Sept. 30, 2024) (taking note of same legislative history); 140 Cong. Rec. H8968-01, H8992 (Aug. 21, 1994) (statement by Rep. Molinari) ("No time limit is imposed on the uncharged offenses for which evidence may be admitted; as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding very substantial lapses of time in relation to the charged

---

[3] *See also United States v. Birdsbill*, 97 Fed. Appx. 721, 723 n.2 (9th Cir. 2004) (stating that "LeMay's interpretation of frequency concerned not how many times an individual victim had suffered at the hands of the defendant but rather the number of prior acts the defendant committed regardless of the victim's identity"); *United States v. Josytewa*, 848 Fed. Appx. 768, 769 (9th Cir. 2021) (in discussing whether evidence of prior assault from 1991 should be admissible, noting that the 1991 assault was similar to the charged assault from 2016 and that there was "evidence of a third incident involving three children before the 1991 assault"); *United States v. Perez*, No. ED CR 13-00087-(A)-VAP, 2014 U.S. Dist. LEXIS 198353, at *7 (C.D. Cal. May 15, 2014) (in discussing whether prior bad conduct toward victim X.C. should be admitted, noting that there were additional examples of uncharged conduct by defendant (against prior victim C.D. and against current victim T.M. but involving different incident than the one charged)).

[4] The Court does not otherwise consider the prior acts related to Mr. Kapoor's ex-wives and ex-girlfriend as they are not sufficiently similar in nature.

offense or offenses.").

Finally, the Court acknowledges that the government will be offering other more direct evidence as part of its case, including the testimonies of another passenger on the flight, the flight attendant, and C.K.'s friend. On the other hand, the testimonies of these individuals appear to be somewhat limited. In any event, the L.M. incident is not of minimal significance to the government's case as, given the similarities identified above, it counters any defense argument that the C.K. incident was a simple innocent misunderstanding.

Taking into account all of the above, the Court concludes that the L.M. incident is admissible under Rule 413. The above factors also demonstrate that Rule 403 is not a bar to admissibility. The probative value of the evidence is not substantially outweighed by a danger of unfair prejudice. Furthermore, there is no danger of confusing the jury or wasting time because the L.M. incident is a discrete one.

2.  Rule 404(b)

The Court also concludes that the L.M. incident is independently admissible under Rule 404(b). The evidence is admissible for the non-propensity purpose of showing that Mr. Kapoor's conduct vis-à-vis C.K. was not an innocent misunderstanding but rather was intentional. *See* Fed. R. Evid. 404(b)(2) ("[Prior bad act] evidence may be admissible for another purpose, such as proving motive, . . . intent, . . . plan, . . . absence of mistake, or lack of accident."). Although the L.M. incident took place back in 2012, the Ninth Circuit has allowed 404(b) evidence as old as 12-13 years. *See, e.g.*, *United States v. Torres*, 824 Fed. Appx. 467, 469-70 (9th Cir. 2020) (holding that defendant's 12-year-old prior conviction was not too remote in time; "this Court in *Vo*, in concluding that the district court did not abuse its discretion in admitting evidence of a thirteen-year-old conviction, recognized that our 'court has not identified a particular number of years after which past conduct becomes too remote'"); *United States v. Estrada*, 453 F.3d 1208, 1213 (9th Cir. 2006) (stating that "[c]ourts have allowed Rule 404(b) evidence to be admitted where ten years or longer periods of time have passed"; citing Ninth Circuit cases for ten and thirteen years). To the extent Mr. Kapoor asserts Rule 403 as a bar, the analysis above applies.

B.   Evidence Related to T.C.

    1.   Timing of Disclosure

The Court first addresses the timeliness of the government's disclosure – *i.e.*, that it intended to use the T.C. evidence at trial. The government acknowledges that, to the extent it seeks to admit the evidence under Rule 413, the disclosure was untimely. Rule 413 disclosures were due by June 5, 2024, but the government did not disclose its intent to use the T.C. evidence until August 29, 2024. The government argues, however, that it should be given relief from the deadline.

The parties agree that the Court may grant relief from a previously established schedule if there is good cause to do so. *See, e.g.*, *United States v.* Shaw, No. 22-cr-00105-BLF-1, 2023 U.S. Dist. LEXIS 60066, at *12-13 (N.D. Cal. Apr. 5, 2023) (considering whether there was good cause to modify scheduling order with respect to 404(b) evidence); *cf.* Fed. R. Crim. P. 12(c)(3) (providing that, "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely[,] [b]ut a court may consider the defense, objection, or request if the party shows good cause"). The parties also agree that factors to consider in assessing good cause include whether the party seeking relief acted diligently and whether the party opposing relief would suffer any prejudice if relief were granted. *See, e.g.*, *Shaw*, 2023 U.S. Dist. LEXIS 6066, at *12-13; *cf.* Fed. R. Crim. P. 12(c)(3), 2014 advisory committee notes (stating that good cause is "a flexible standard that requires consideration of all interests in the particular case"); *United States v. Fogg*, 922 F.3d 389, 391 (8th Cir. 2018) (noting that good cause under Rule 12(c)(3) requires an assessment of both cause and prejudice).

Here, arguably, the government could have been more diligent in finding the T.C. evidence. However, the Court is satisfied that the government did not unduly delay and, more important, it finds that the government's late disclosure has not prejudiced Mr. Kapoor. The government produced a copy of the police report to Mr. Kapoor in mid-July 2024. It gave notice of its intent to use the T.C. evidence – after it had interviewed T.C. – about a month and a half later. Trial will not take place until January 2025. Given this timing, Mr. Kapoor has not been prejudiced by the government's delayed disclosure. Moreover, at the hearing, Mr. Kapoor

1  essentially conceded that the late disclosure did not prejudice him, especially in light of the fact
2  that the parties stipulated to an extension of the disclosure deadline for 404(b) evidence to October
3  29, 2024.

        2.     Rule 413

Like the L.M. incident, the T.C. incident is admissible under Rule 413.

First, the Court agrees with the government that a reasonable jury could find, by a preponderance of the evidence, that the T.C. incident was attempted sexual abuse or attempted abusive sexual contact.[5] T.C. is expected to testify that, while Mr. Kapoor was working at a convenience store attached to a gas station, she came in as a customer once or twice a week for about six months. Then, on one occasion, he persuaded her to come with him to a back room in the store so that he could read her palm. In the back room, the door closed behind them, and Mr. Kapoor started to examine T.C.'s palm but then "firmly grabbed her hand and twisted it like he was trying to 'incapacitate' her." Docket No. 53-3 (ECF Page 3). He then pulled T.C., by the neck, toward him and tried to kiss her. T.C. broke free and shoved him, and then ran out of the back room and the store altogether. Like L.M., T.C. said that she "went into fight or flight mode." Docket No. 53-3 (ECF Page 3). She never returned to the store thereafter.

Second, the five *LeMay* factors weigh in favor of admissibility. For instance, the similarities between the L.M. and C.K. incidents discussed above are largely applicable here: T.C. was a stranger to Mr. Kapoor; at the time of the incident, she was young (18 years old) and was in the store unaccompanied; Mr. Kapoor further isolated T.C. by persuading her to go to the back room (with the door closed); and Mr. Kapoor quickly escalated to physical conduct after he got her to the back room. In addition, there are no intervening circumstances that weigh against admissibility, and the fact that the T.C. incident is one of several similar incidents is an important consideration. While the age of the T.C. gives the Court some pause (it took place in 1999), as noted above, the legislative history demonstrates that time is to be considered capaciously under Rule 413. *See also United States v. Caplette*, 365 Fed. Appx. 833, 834 (9th Cir. 2010) (noting that

---

[5] As above, a jury need not so find.

1 Federal Rule of Evidence 609(b) allows prior convictions for impeachment only if they are less
2 than ten years old; in contrast, for Rule 413, there was "Congressional intent . . . to admit all prior
3 sex crimes"). Courts have often admitted prior sex offenses that are two decades old. *See Baker*,
4 2024 U.S. Dist. LEXIS 177999, at *13-14 (listing cases); *see also United States v. Abrams*, 761
5 Fed. Appx. 670, 676 (9th Cir. 2018) (stating that "the time lapse in this case is significant, [but]
6 the number of similarities between the allegations here and the prior acts admitted under Rule 413
7 support the trial judge's admission of the evidence"). As for the necessity of the evidence, as
8 discussed above, the evidence is important as it suggests the C.K. incident was not just some kind
9 of misunderstanding.

10 The above factors also favor admissibility in spite of Rule 403. The probative value of the
11 evidence is not substantially outweighed by a danger of unfair prejudice, and, as with the L.M.
12 incident, there is no danger of confusing the jury or wasting time because the T.C. incident is a
13 discrete one.

14 Because the Court is admitting the T.C. evidence under Rule 413, it need not address
15 whether there should also be admissibility under Rule 404(b), where the age of the incident might
16 be a more significant factor weighing against admissibility. *See United States v. McLean*, 581
17 Fed. Appx. 228, 234 (4th Cir. 2014) (noting that "'[t]he more closely that the prior act is related to
18 the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the
19 prior act'"). The Court acknowledges that, because of the age of the incident, the T.C. evidence
20 presents a closer question under 404(b) than the L.M. evidence.
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## II. CONCLUSION

For the foregoing reasons, the L.M. evidence and T.C. evidence are both admissible.

**IT IS SO ORDERED**.

Dated: October 17, 2024

_____
EDWARD M. CHEN
United States District Judge